OPINION
Defendant-appellant Robert A. Butt Jr., appeals from his conviction and sentence for Felonious Assault and Assault following a jury trial on those charges. Butt argues that the trial court erred and abused its discretion when it dismissed sua sponte a prospective juror after the juror had indicated that he might not be able to follow the law. Butt also argues that his conviction and sentence for Felonious Assault was not supported by sufficient evidence, or was against the manifest weight of the evidence.
We conclude that the trial court did not err by dismissing a prospective juror sua sponte, where one of the parties indicated its approval of the juror being dismissed, and where the need to dismiss the juror was apparent, since the juror had stated under voir dire examination that he was unwilling to follow the law. We also conclude that Butt's conviction on the Felonious Assault charge was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
On New Year's Eve, 1997, Butt arrived at a nightclub called Diamond Phyl's at about midnight. Butt sat down at a table with John "Dusty" McEntire and several other people. The people at Butt's table drank heavily and soon became rowdy and violent. When McEntire punched another customer without any provocation, the bar's bouncer, Steve Perdue, ordered everyone at Butt and McEntire's table to leave. However, the owner of Diamond Phyl's soon permitted them to return.
Shortly thereafter, McEntire slapped a pregnant woman who refused to dance with him and punched another woman "across three tables." Richard Dean and his twin brother, Robert, intervened on behalf of the women, grabbing McEntire and pinning him against the jukebox until Perdue could arrive. Upon hearing his name being called, Richard looked behind him. At that very moment, Butt punched Richard in the face, spinning him around like a top. Butt then sat down at a bar stool that had been occupied by Andrew Hall, who had left to use the restroom. When Hall returned, he asked Butt for his seat back. Butt cursed at Hall and refused to move. Hall sought, without success, the assistance of a bartender, and then decided to leave. However, he first returned to his seat to retrieve his personal belongings. When he did so, Butt punched Hall in the nose, knocking him to the ground. Perdue escorted Butt to the door, where Butt threatened to beat Hall again, and threatened Perdue for refusing to let him go. When the police arrived, Perdue pointed Butt out to them. After observing Butt staggering around, one of the officers helped Butt into his cruiser. The odor of alcohol emanating from Butt was so strong that the officer had to leave the window of his cruiser down.
On February 19, 1998, Butt was indicted on two counts of Felonious Assault. The case proceeded to trial on February 1, 1999. Among the witnesses testifying for the State were the Dean brothers and Hall, who testified to the facts related above. Butt presented the testimony of several witnesses who said that they did not see Butt enter the fight. The jury found Butt guilty of Felonious Assault for his attack on Richard Dean, and guilty of the lesser-included offense of Assault for his attack on Andrew Hall. Butt subsequently moved for a judgment of acquittal, or, in the alternative, a new trial. The trial court overruled Butt's motion, and sentenced him to a three-year prison term for his Felonious Assault conviction and a six-month prison term for his Assault conviction, with both terms to be served concurrent to each other and concurrent with Butt's sentence in an unrelated Miami County case.
Butt appeals from his conviction and sentence for Felonious Assault and Assault.
 II
In his First Assignment of Error, Butts argues that
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION WHEN THE TRIAL COURT DISMISSED A JUROR WITHOUT A CHALLENGE FOR CAUSE BEING MADE BY THE STATE AND THERE WAS NO SHOWING THAT THE JUROR WOULD NOT RENDER AN IMPARTIAL VERDICT ACCORDING TO THE LAW AND THE FACTS.
During the jury selection process, James Barnum, a prospective juror, stepped forward and requested to be heard at a sidebar conference. Barnum informed the trial court that he had previously been involved in a Felonious Assault case, and that "[i]f this situation forces me to find somebody guilty that I think is probably justified in what he did, I would have a hard time with that." The trial court asked the party's attorneys if they had any objection to excusing Barnum. The prosecutor stated that she did not have any objections since Barnum did not "feel comfortable based on his past experience." Then, defense counsel, the prosecutor, and the trial court asked Barnum a series of questions regarding his statement. The prosecutor asked Barnum, "[i]f the state proves its case beyond a reasonable doubt and the judge instructs you on the law, can you follow the law regardless of whether you feel it is justified or not," to which Barnum replied, "I can't say I can follow the law." The trial court asked Barnum several questions, as follows:
 THE COURT: Well, let me make sure I understand. If, Mr. Barnum, you've heard all of the instructions of the law from the Court and based on the law that governs the case, the law would lead you to conclude beyond a reasonable doubt the defendant is guilty, are you saying that you would disregard the law and find the defendant not guilty if you thought for your own personal reasons —
 MR. BARNUM: If it was justified what he did, I'd say he was not guilty.
 THE COURT: Even if the law said the justification is not there?
MR. BARNUM: Yes, yes.
* * *
 THE COURT: Let me try one from this angle. If you were instructed by the Court that in a case like this there may be Justification A or Justification B and so you hear that instruction about these possible justifications but the law that you determine that justifications are not in evidence, haven't been proven, if you find some other personal justification that you think should apply, are you saying to the Court you will apply this other personal justification that you have and find the defendant not guilty?
MR. BARNUM: That could happen, yes.
The trial court dismissed Barnum, over defense counsel's objections.
Butt argues that the trial court erred and abused its discretion when it dismissed Barnum, when neither party had requested that he be dismissed for cause, and when it had not been shown that Barnum could not render a fair and impartial verdict. Specifically, Butt argues that the trial court erred by "not permitting [his] attorney * * * to rehabilitate the juror to find out whether his personal justifications would be the same as the justifications * * * defined by Ohio law." We disagree.
It has been held in this state that "a trial court may, in the exercise of its discretion, sua sponte dismiss a juror when it determines that a juror possesses either enmity or bias toward a party or determines that for some other reason a juror is not impartial or is otherwise unsuitable for service." State v.Midwest Pride IV, Inc. (1998), 131 Ohio App.3d 1, 20. The court inMidwest Pride IV, Inc., found that "a trial court's authority to suasponte dismiss a juror when it determines that a juror is not impartial or otherwise unsuitable for service" is "implicit in Crim.R. 24,"id., at 19, apparently since, pursuant to that rule, a trial court is permitted to conduct the voir dire examination of prospective jurors itself. The court in Midwest Pride IV, Inc.,
also found that dismissing a prospective juror sua sponte was within the inherent powers of a trial court. Id., citing State exrel. Pfeiffer v. Lorain Common Pleas Court (1968), 13 Ohio St.2d 133,136-137 (a court has "inherent power * * * to do all things necessary to the administration of justice and to protect its own powers and processes and the rights of those who invoke its processes.").
Butt has not cited, nor have we found, any authority to preclude a trial court from dismissing a prospective juror suasponte if good cause exists for doing so. Butt has also failed to proffer any argument as to why a trial court should be precluded from dismissing a prospective juror sua sponte for good cause, nor can we think of one. While it may have been wiser for the trial court to ask the parties if either of them wanted to challenge Barnum for cause, once he indicated that he might have trouble rendering a fair and impartial verdict, rather than asking the parties if either objected to Barnum being dismissed, one of the parties, the State, did indicate its approval of the juror being dismissed. Furthermore, as we shall explain momentarily in greater detail, the need to dismiss the prospective juror in this case was apparent. Indeed, if the trial court had declined to dismiss the prospective juror on the grounds that it lacked authority to do so, absent a challenge for cause by one of the parties, it seems all but inevitable that the State would have challenged Barnum for cause, given his statements.
Furthermore, the trial court did not abuse its discretion in dismissing Barnum. Crim.R. 24(B) permits a juror to be challenged for cause when it is shown that "he is possessed of a state of mind evincing enmity or bias toward the defendant or the state[,]" Crim.R. 24(B)(9), or "is otherwise unsuitable for any other cause to serve as a juror[,]" Crim.R. 24(B)(14). Here, Barnum stated that he might not be able to follow the law and vote to convict the defendant if he thought the defendant's actions were justified, irrespective of whether the justification was one recognized under Ohio law. Barnum's response gave the trial court ample cause to remove him from the case.
Butt asserts that the trial court should have permitted his defense counsel to question Barnum to see if his views of what would constitute a justification for an assault were consistent with the law in this state, e.g., that a person is allowed to act in self-defense, and that, therefore, it was premature to remove him as a juror until his counsel had an opportunity to question Barnum about this possibility. We disagree. Initially, the trial court did not prevent Butt's counsel from asking these questions, nor did Butt's counsel ask the trial court for an opportunity to ask Barnum additional questions. Furthermore, Butt misses the point. The fact that Barnum indicated an unwillingness to follow the law provided sufficient grounds alone for his dismissal. The trial court was not obligated to determine if all of the possible circumstances that would justify an assault in Barnum's eyes were consistent with the justifications recognized under Ohio law. To have made that determination would have required the trial court to ask Barnum to present a seminar, presumably out of the hearing of other prospective jurors, on his personal theories of justification for an assault, and then to question Barnum carefully to make sure that there might not be additional, unarticulated theories of justification to which Barnum might subscribe. We cannot find that it was an abuse of discretion for the trial court to have decided not to trudge down that road. The parties were entitled to jurors who were willing to follow the law. Neither party was entitled to jurors who would follow the law only as long as they were in agreement with it.
In light of the foregoing, Butt's First Assignment of Error is overruled.
 III
Butt's Second Assignment of Error states:
 APPELLANT'S CONSTITUTION (sic) RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE THE GUILTY FINDING BY THE TRIER OF FACTS WAS: (A) NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE AND (B) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Butt argues that his conviction for Felonious Assault against Richard Dean was not supported by sufficient evidence, or, in the alternative, was against the manifest weight of the evidence.[1] We disagree.
In determining whether the evidence presented at trial is sufficient to support a conviction, a reviewing court must decide whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Although an appellate court may determine that a judgment is supported by sufficient evidence, it nevertheless may conclude that the judgment is against the manifest weight of the evidence. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In determining whether a conviction is contrary to the manifest weight of the evidence, an appellate court:
 reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175, quoted with approval in State v. Thompkins, supra.
In order to obtain a conviction for Felonious Assault, the State had to show that Butt knowingly caused serious physical harm to Richard Dean. See R.C. 2903.11(A)(1). "Serious physical harm" is defined in R.C. 2901.01 as any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
Here, the State presented sufficient evidence to demonstrate that Butt had knowingly caused Richard Dean serious physical harm by punching him in the face. Both Richard and Robert Dean testified that Butt punched Richard in the face when they were attempting to restrain Dusty McEntire, who had been sitting with Butt, and who had just struck a pregnant woman. Richard testified that he did not immediately realize how much damage had been done to his face because it was swollen and numb; however, Richard awoke at 4:00 a.m. on the morning of the incident, with excruciating pain to his face. Later, he could see that his face looked "flat," that his left eye "was kind of up a little bit," and that he could not see directly out of his left eye. He could also move "three pieces" of his cheekbone around.
Richard first sought medical treatment for his injuries four days after the incident had occurred. He had waited that long, in part, because the initial swelling had left his face numb, and, in part, because he did not have medical insurance to cover the expense. After being examined, Richard learned that his cheekbone had been broken in three sections, that the bones forming his eye socket had been "shattered," and that the roof of his mouth and the corner of his nose had been cracked. As a result of his injuries, Richard was required to undergo facial reconstructive surgery to put plates in his cheek and to rebuild his eye socket. The operation took six to eight hours. After the initial surgery, Richard's face collapsed in on itself, and he had to undergo a second surgery to repair his face. More than a year after the assault, Richard continued to experience problems with the left side of his face. For example, he has blurred vision in his left eye, has lost some peripheral vision in his left eye, and has trouble sleeping due to sinus pressure stemming from his injuries and subsequent operations. As a result of his injuries, Richard was off work for three and one-half months, eventually lost his job and his trailer, and, according to his doctor, will have eye problems for the rest of his life.
The jury's verdict was also not against the manifest weight of the evidence. Butt did have several witnesses testify that they did not see Butt enter the fight, and Butt's girlfriend, Danielle Renee Ewing, testified that he was not in the fight at all. However, the credibility of the witnesses and the weight to be given their testimony is primarily a matter for the trier of fact, since it is in the best position to judge the credibility of the witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Although the Dean brothers may have had a financial motive to fabricate their testimony against Butt given the fact that Richard is bringing a civil action against Butt and Diamond Phyl's as a result of his injuries, the jury was made aware of this fact, and presumably took it into account in their deliberations. In fact, Butt's girlfriend had a motive to testify falsely in Butt's favor, as did Derrick Webb, whose wife was a friend of Butt's girlfriend. Also, the fact that several of Butt's witnesses testified that they did not see Butt "enter the fight," does not mean that he did not do so; this is especially so given the chaos that was taking place in the bar that night. For example, one of Butt's witnesses, Carmalita Capps, acknowledged that her view of the altercation between the Dean brothers and McEntire was blocked by other customers, and that she is not sure whether Butt went over to the place where the Deans were trying to restrain McEntire.
Furthermore, while Perdue testified that Butt was at the bar when he saw the Dean brothers standing by McEntire, and that he did not see anyone hit Richard Dean, he also testified that he had to break up four or five fights that night. It appears from the evidence that Perdue simply missed seeing Butt punch Richard. Additionally, while Butt emphasizes that Richard Dean waited four days before receiving medical treatment, Richard provided a plausible explanation for his delay (i.e., lack of medical insurance, and numbness arising from swelling initially hid pain).
Butt's Second Assignment of Error is overruled.
 IV
Both of Butt's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 ___________________ FAIN, J.
BROGAN and WOLFF, JJ., concur.
[1] Butt does not challenge his conviction for Assault against Andrew Hall under this assignment of error.